UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DENISE DOLLARD and MICHAEL DOLLARD,

                                  Plaintiffs

                                               **PLAINTIFFS REPONSE TO THE**
                                               **STATEMENTOF UNDISPUTED**
                                               **FACTS PURSUANT TO LOCAL**
                                               **CIVIL RULE 56.1**

                                               No. 16-CV2529 (LDH) (CLP)

                -against-

THE CITY OF NEW YORK, ET AL.,

                                  Defendants.

-------------------------------------------------------------------------x

**PLAINTIFFS' RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS OF**
**DEFENDANT CITY, FORTUNE AND KENTON FOR THEIR MOTION FOR SUMMARY**
**JUDGMENT AND PLAINTIFFS' FURTHER STATEMENT OF MATERIAL FACTS**

Plaintiffs, DENISE DOLLARD and MICHAEL DOLLARD for their Response to the

Statement of Undisputed Facts of the Defendants, CITY OF NEW YORK, PETER FORTUNE AND

RUSSELL KENTON and for their Further Statement of Uncontested Facts Pursuant to Rule 56.1, state

as follows:

General Objections: Any admissions made by Plaintiff in these Responses are made solely for

purposes of the proposed Motions by the Defendants. Plaintiffs object to the Defendants' Statement of

Facts to the extent they contain conclusions, opinions or legal arguments. To the extent this court would

require same we would seek permission to cross-move to strike those improper portions of Defendant's

Rule 56.1 statement.

# Background

1.      Defendant Police Officer Russell Kenton ("Kenton") graduated from the NYPD

Academy in December of 2014. Ex. C (Transcript of Deposition of Russell Kenton, taken June 15, 2017

[1]

("Kenton Dep. Tr.")), 19:20-21.

> **RESPONSE:** Undisputed.

2. On May 19, 2015, Kenton was a probationary police officer. Ex. C (Kenton Dep. Tr.), 50:21-20.

> **RESPONSE:** Undisputed.

3. On May 19, 2015, Kenton was assigned to the 114th Precinct and was working with defendant NYPD Police Officer Rhea Tiwary ("Tiwary"). Ex. C (Kenton Dep. Tr.), 19:22-20:2, 50:4-7.

> **RESPONSE:** Undisputed.

4. Tiwary was Kenton's field training officer ("FTO") that particular day. Ex.C (Kenton Dep. Tr.), 50:13-20; Ex. D (Transcript of Deposition of Rhea Tiwary, taken June 21, 2017 ("Tiwary Dep. Tr.")), 27:12-14.

> **RESPONSE:** Undisputed.

5. As Kenton's FTO, Tiwary's responsibilities were "to take point," meaning that Tiwary would initiate the conversations with the public and would lead, and Kenton would be expected to observe how Tiwary handled things. Ex. D (Tiwary Dep. Tr.), 27:22-29:10.

> **RESPONSE**: Disputed. This statement misrepresents the actual testimony in an attempt to draw a conclusion to support a proposed motion. In actuality, Tiwary testified that the only responsibility she had to train Kenton was she expected him to learn from her by observing her. Ex. A (Tiwary Dep. Tr.) P.29, L. 5-10. To be clear, Tiwary stated that they were equals in terms of their police responsibilities, testifying that she was not in a superior position to Kenton and it was not her job to supervise him. Ex. A (Tiwary Dep. Tr.) P.27, L.15-21.

6. On May 19, 2015, defendant Deputy Inspector Peter Fortune ("Fortune") held the rank of Captain and was the Commanding Officer of the 114th Precinct. Ex. E (Transcript of Deposition of

[2]

Peter Foliune, taken June 2, 2017 ("Fortune Dep. Tr.")), 12:4-14.

**RESPONSE:** Undisputed.

### Denise Dollard's May 19, 2015, Arrest

7.    At approximately 8:40 or 8:45AM on May 19, 2015, Tiwary and Kenton were dispatched to the vicinity of Saint Margaret Mary's Church on Avenue in Queens (the "Church") in regard to a 911 complaint about a dispute in progress. Ex. C (Kenton Dep. Tr.), 54:6-57:12; Ex. D (Tiwary Dep. Tr.), 33:6-24, 35:8-13.

**RESPONSE**: Undisputed.

8.    Tiwary and Kenton arrived in the vicinity of the Church approximately 5 minutes later. Ex. C (Kenton Dep. Tr.), 58:4-7.

**RESPONSE**: Undisputed

9.    Outside of the Church, Tiwary and Kenton were waved down by the complainant. Ex. C (Kenton Dep. Tr.), 62:6-10, 65:6-12; Ex. D (Tiwary Dep. Tr.), 39:13-40:11, 41:13-21.

**RESPONSE:** Undisputed.

10.    Tiwary spoke to the complainant. Ex. D (Tiwary Dep. Tr.), 42:6-12, 43:7-20; Ex. C (Kenton Dep. Tr.), 62:6-10, 65:6-10, 65:6-12; Ex. D. (Tiwary Dep. Tr.), 39:13-40:11, 41:13-21

**RESPONSE:** Undisputed

11.    The complainant told Tiwary that "Denise" had told the complainant not to park on the sidewalk outside of the Church and that a dispute had ensued. Ex. D (Tiwary Dep. Tr.), 43:21-44:9, 53:9-20; Ex. C (Kenton Dep. Tr.),64:12-19, 70:7-23

**RESPONSE:** Undisputed.

12.    The complainant told Tiwary that "Denise" was the director of the Church and was inside the Church. Ex. D (Tiwary Dep. Tr.), 45:10-23.

[3]

**RESPONSE:** Undisputed

13.    After Tiwary spoke with the complainant, Tiwary and Kenton went inside the Church to speak to "Denise." Ex. D (Tiwary Dep. Tr.), 49:24-50:4; Ex. C (Kenton Dep. Tr.), 68:10 22, 73:8-22.

**RESPONSE:** Undisputed.

14.    It was Tiwary's decision to go into the Church.   Ex. C (Kenton Dep.   Tr.), 80:9-14.

**RESPONSE:** Undisputed.

15.    Tiwary gained entry into the Church and Kenton followed her in. Ex. C (Kenton Dep. Tr.), 82:14-25.

**RESPONSE:** Undisputed.

16.    Tiwary and Kenton encountered Denise Dollard ("Denise") in an auditorium or cafeteria inside the Church. Ex. D (Tiwary Dep. Tr.), 60:2-12, 62:16-64:23; Ex. A (Transcript of Deposition of Denise Dollard, taken August 3, 2017 ("Denise Dollard Dep. Tr.")), 45:1-3, 46:17-24.

**RESPONSE:** Undisputed

17.    The encounter in the auditorium/cafeteria lasted approximately 3 minutes. Ex. A (Denise Dollard Dep. Tr.), 65:25-66:15

**RESPONSE:** Undisputed. However, Plaintiffs object to this statement as irrelevant and immaterial to the issues presented by the proposed motions. Indeed, Defendant admits the same in its foot note.

18.    During the encounter in the auditorium/cafeteria, Tiwary and Denise had a conversation about the 911 complaint. Ex. A (Denise Dollard Dep. Tr.), 53:4-57:7; Ex. C (Kenton Dep. Tr.), 86:22-88:25.

**RESPONSE:** Undisputed. Plaintiffs object to this statement as irrelevant and immaterial to the issues presented by the proposed motions.

[4]

19.     During the encounter in the auditorium/cafeteria, Tiwary accused Denise of spitting on her. Ex. A (Denise Dollard Dep. Tr.), 62:9-18.

     **RESPONSE:** Undisputed.

20.     Denise did not spit on Tiwary. Ex. A (Denise Dollard Dep. Tr.), 157:17-19.

     **RESPONSE:** Undisputed.

21.     During the encounter in the auditorium/cafeteria, Tiwary asked Denise for her identification multiple times. Ex. A (Denise Dollard Dep. Tr.), 57:25-58:2, 63:7-64:2.

     **RESPONSE:** Undisputed.

22.     Tiwary asked for the identification because she was going to issue Denise a summons. Ex. D (Tiwary Dep. Tr.), 87:12-23, 104:11-105:15.

     **RESPONSE:** Objection/Disputed. Plaintiffs object to this statement as constituting conclusions and argument and because it is not uncontested. In opposite, Defendant Kenton testified he had no idea why Defendant Tiwary would ask for Denise Dollard's Identification. Ex. B (Kenton Dep. Tr.) P.92, L.19- P.93, L.5 and again at P.101, L.23- P. 102, L. 8. Further, Denise Dollard testified Tiwary asked for her identification before accusing her of spitting and when she asked why Tiwary wanted her identification Tiwary told her it was "none of your business." Ex. C (Denise Dollard Dep. Tr.), P.62, L.5-11; P.217, L.20-22; P.219, L.10-13; P. 229, L.13-18.

23.     Denise did not have her identification; it was locked inside her office in another part of the Church. Ex. A (Denise Dollard Dep. Tr.), 58:3-7.

     **RESPONSE:** Undisputed

24.     Eventually, Denise said that she would get her identification and proceeded to walk towards her office. Ex. A (Denise Dollard Dep. Tr.), 6 5 : 1 5 -67:7.

     **RESPONSE:** Objection. Plaintiffs do not contest this statement other than to

[5]

object to the use of qualifiers such as "eventually" which allows or suggests conclusions of delay on the part of Plaintiff which are not supported by the record. The word "eventually" is not in the testimony cited in support.

25.     Tiwary and Kenton followed Denise out of the auditorium and towards Denise's office. Ex. C (Kenton Dep. Tr.), 92:2-8; Ex. D (Tiwary Dep. Tr.), 94:24-95:2.

**RESPONSE:** Undisputed

26.     Church security video captured, *inter alia,* portions of an interaction between Denise and Tiwary in the vicinity of an office. Ex. F (Video), 00:00 - 04:05; Ex. A (Denise Dollard Dep. Tr.), 10:16-11:19, 12:4-9, 71:6-82:13

**RESPONSE:** Objection. Plaintiffs do not contest this statement except to object to the use of qualifiers such as "portions" which allows or suggests conclusions which are not supported by the record. The word "portions" is not in the testimony cited in support

27.     Coming from the foyer, Denise walked through a doorway and into a waiting area, and then through another doorway with a glass door that leads to a secretary's office. Ex. A (Denise Dollard Dep. Tr.), 70:25-72:8; Ex. F (Video), 00:00 -00:12.

**RESPONSE:** Objection. Plaintiffs object to this statement as irrelevant and immaterial to the issues presented by the proposed motions; also, the video speaks for itself.

28.     Getting to Denise's office required going through a third door inside the secretary's office. Ex. A (Denise Dollard Dep. Tr.), 68:12-13, 70:25-71:5, 71:20-72:8.

**RESPONSE:** Uncontested.

29.     Denise never made it to her office where her identification was. Ex. A (Denise Dollard Dep. Tr.), 67:10-19, 76:19-24.

**RESPONSE:** Uncontested.

30.     The glass door was closing behind Denise Dollard as she walked into the secretary's

[6]

office. Ex. F (Video), 00:08-00:12; Ex. D (Tiwary Dep. Tr.), 97:19-98:11.

   **RESPONSE:**  Uncontested.


   31.   Tiwary opened the glass door and propped it open by putting the door lock down.  Ex. F

(Video), 00:12-00:16; Ex. D (Tiwary Dep. Tr.), 100:14-20

   **RESPONSE:**  Objection/Disputed. Plaintiffs object and dispute this statement as

misconstruing what Tiwary actually did. Tiwary aggressively and violently yanked the door. Ex. C.

(Denise Dollard Dep. Tr.) P 77, L5-16, also, Kenton testified Tiwary "ripped the door open" Ex. B

(Kenton Dep. Tr.) P.172, L. 4.

   32.   Denise then walked back through the now-open glass door and stood in the

waiting room; she then walked in and out of the secretary's office a second time, and then   walked

back through the waiting room back out into the foyer. Ex. F (Video), 00:16-00:50.

   **RESPONSE:**  Objection. Plaintiffs object to this statement as irrelevant and immaterial

to the issues presented by the proposed motions; also, the video speaks for itself

   33.   During this time, Kenton remained in the waiting room between the foyer and the

\secretary's office. Ex. F (Video), 00:16-00:50; Ex. D (Tiwary Dep. Tr.), 95:3-96:16, 115:12-14.

   **RESPONSE**:  Uncontested.

   34.   Denise then walked back to the waiting room, paused for approximately fifteen seconds

in the doorway between the foyer and the waiting room, and then walked through the waiting room and

back through the doorway with the open glass door to the secretary's office. Ex. F (Video), 00:50-

01:17.
   **RESPONSE:**  Plaintiffs object to this statement as irrelevant and immaterial to

the issues presented by the proposed motions and state that the video speaks for itself.

35.      When Denise walked through the doorway to the secretary's office this last time,

Tiwary was standing sideways in the doorway. Ex. F (Video), 01:13-01:16; Ex. A (Denise Dollard Dep.

Tr.), 80:4-20, 81:3-5, 231:12-21.

**RESPONSE:**  Uncontested.

36.      As Denise walked through the doorway to the secretary's office past Tiwary, Tiwary

"attacked" her.  Ex. A (Denise Dollard Dep. Tr.), 81:3-16, 232:23-234:12.

**RESPONSE:**  Uncontested.

37.      During the "attack" Tiwary elbowed Denise in the back, shouldered her in the left

shoulder blade, put one handcuff on her, headbutted her in the right shoulder blade, put the second

handcuff on her and swung her around and into a glass door. Ex. A (Denise Dollard Dep. Tr.)  81:3-16,

234:13-235:7, 236:5-237:21.

**RESPONSE:**  Uncontested.

38.      The entire "attack" was captured on video.  Ex. A (Denise Dollard Dep.  Tr.),

81:3-20.

**RESPONSE:** This may be a fair interpretation of what Denise testified to based on the

wording of the question, but it is not uncontested. Ex. D. (Fortune Dep. Tr.) P. 65, L. 23- P.66, L.6.

Also, the video speaks for itself.

39.      From the time that Denise first walked through the doorway past Tiwary to the time

that Tiwary placed Denise's arms behind her back, Kenton was standing in the waiting room between

the foyer and the secretary's office.  Ex. F (Video), 01:15-01:22.

**RESPONSE:**  Uncontested.

40.      Kenton was behind Denise Dollard when Tiwary "attacked" her. Ex. A (Denise

Dollard Dep. Tr.), 84:18-25.

**RESPONSE:**  Uncontested.

[8]

41.     Kenton did nothing during this time. Ex. A (Denise Dollard Dep. Tr.), 82:14-17.

**RESPONSE:** Uncontested.

42.     Denise had no problem with Kenton, other than that he scared her with something he said at one point because she didn't know she was being arrested. Ex. A (Denise Dollard Dep. Tr.), 91:15-92:5.

**RESPONSE:** Plaintiff objects to this statement as irrelevant and immaterial to the issues presented by the proposed motions and constituting argument and conclusion.

43.     Other than later putting handcuffs on Denise while she was in an ambulance, at the direction of a superior officer, Kenton never touched Denise. Ex. A (Denise Dollard Dep. Tr.), 99:11-100:9, 183:13-22.

**RESPONSE:** Objection/Disputed. Plaintiffs object to this statement as irrelevant and immaterial to the issues presented by the proposed motions constituting conclusions and argument. It is also disputed by the testimony of Kenton who said he lifted her from the chair after she was handcuffed in the church, physically guided her out of the church and changed her handcuffs at the hospital after she complained they were too tight. Ex.B (Kenton Dep. Tr.) P. 138, L.15-P.139, L.15 and P.161, L.23-P.163, L. 24.

44.     Denise had high blood pressure that predated May 19, 2015. Ex. A (Denise Dollard Dep. Tr.), 100:12-24.

**RESPONSE:** Uncontested.

45.     Denise had also been suffering from vertigo for 20 years prior to May 19, 2015. Ex. A (Denise Dollard Dep. Tr.), 97:2-7.

**RESPONSE:** Uncontested

[9]

46.     When Denise was being "attacked" and handcuffed by Tiwary, Denise's vertigo

kicked in and she lost her balance and couldn't breathe. Ex. A (Denise Dollard Dep. Tr.), 81:3-82:7.

**RESPONSE:**  Uncontested

47.     Denise whispered that she couldn't breathe. Ex. A (Denise Dollard Dep. Tr.), 81:3-16,

83:17-22, 85:20-86:4.

**RESPONSE:**  Uncontested.

48.     When Denise said that she couldn't breathe, Kenton said, "call the bus," which Denise

understood to m an ambulance.  Ex. A (Denise Dollard Dep. Tr.), 85:20-86:24.

**RESPONSE:**  Uncontested.

49.     Tiwary and Kenton sat Denise in a chair.  Ex. A (Denise     Dollard Dep. Tr.),

85:20-86:4.

**RESPONSE:**  Plaintiffs object to this statement as irrelevant and immaterial to the issues

presented by the proposed motions.

50.     Tiwary called for an ambulance around 9:08am, because Denise was complaining of

difficulty breathing.   Ex. D (Tiwary Dep. Tr.), 127:9-21.

**RESPONSE:**  Uncontested.

51.     Around the same time that she called for an ambulance, Tiwary also called for a

sergeant to come to the scene, to verify Denise's arrest.  Ex. D (Tiwary Dep. Tr.), 133:9-19.

**RESPONSE:**  Uncontested.

52.     Sergeant Blake and Officer Brown, Blake's driver, came into the office.   Ex. C (Kenton

Dep. Tr.), 129:4-10; Ex. D (Tiwary Dep. Tr.), 133:20-134:7; Ex. A (Denise Dollard Dep. Tr.), 88:3-10.

**RESPONSE:**  Uncontested.

53.     When Sergeant Blake arrived, Tiwary told him, in sum and substance, that Denise

was under arrest and that "she pushed me. She body checked me." Ex. D (Tiwary Dep. Tr.), 134:12-18.

[10]

**RESPONSE:** Uncontested.

54.     Denise was taken out of the office and out of the Church. Ex. D (Tiwary Dep. Tr.),

136:13-16; Ex. A (Denise Dollard Dep. Tr.), 89:7- 90:2;242:9-23.

   **RESPONSE:** Uncontested.

55.     When Denise was taken out of the Church her vertigo kicked in again and she passed

out twice. Ex. A (Denise Dollard Dep. Tr.), 89:15-90:9, 92:19-93:11.

   **RESPONSE:** Uncontested.

56.     An ambulance arrived on the scene at 9:18AM, and ambulance personnel made

contact with Denise at 9:19AM. Ex. G (Certified Ambulance Call Report ("ACR")), at DEF976.

   **RESPONSE:** Uncontested.

57.     Denise told the ambulance technicians that she "didn't feel good," that her handcuffs

were too tight and that she "banged [her] head here, a little knot but not a big deal." Ex. A (Denise

Dollard Dep. Tr.), 172:15-173:20.

   **RESPONSE:** Uncontested.

58.     Ambulance technicians evaluated Denise at the scene. Ex. A (Denise Dollard Dep.

Tr.), 95:23-96:10, 172:15-173:23.

   **RESPONSE:** Uncontested.

59.     The ambulance technicians found that Denise Dollard had "no medical problem." Ex.

G (ACR), at DEF977.

   **RESPONSE:** Objection/Disputed. Plaintiffs object to this statement as

irrelevant and immaterial to the proposed motions and constituting conclusions and argument and

because it is misleading and not uncontested. In opposite, she was brought by the ambulance to the

hospital where her "medical problems" were diagnosed, testing ordered, and she was provided

treatment. Def Ex. H, at Def 925-926.

[11]

60.     Denise was taken by ambulance to Mount Sinai Queens hospital at 9:34AM and arrived at 9:37AM.  Ex. G (ACR), at DEF976.

**RESPONSE:** Uncontested.

61.     Kenton rode with Denise to the hospital in the ambulance. Ex. C (Kenton Dep. Tr.), 147:11-15; Ex. A (Denise Dollard Dep. Tr.), 46:23-47:18.

**RESPONSE:** Uncontested.

62.     At the hospital, Denise complained of high blood pressure and a slight headache. Ex. H (Certified records from Mt. Sinai Queens Hospital Emergency Department ("Mt. Sinai ER records")  at DEF921.

**RESPONSE:** Objection/Disputed. Plaintiffs object because this statement is irrelevant and immaterial to the proposed motion and to the use of qualifiers such as "slight" and state that the hospital records cited also state Denise complained and of dizziness, weakness, loss of consciousness, falling and that she "appeared distressed". Def  Ex. H, at DEF925.

63.     At the hospital, Denise had her blood pressure taken numerous times and was given a EKG, but received no other treatment.   Ex. A (Denise Dollard Dep. Tr.), 101:18-102:25.

**RESPONSE:** Objection/Disputed. Plaintiffs object to this statement as it contains conclusions and argument on what constitutes treatment, an area for medical experts. It is also irrelevant and immaterial to the proposed motions. Further, it is not uncontested. The hospital record states Denise was found to have an abnormal EKG and received treatment in the manner of medications and medical advice/instruction. Def. Ex. H, at DEF 925-926. The treatment is confirmed by Defendant Kenton. Ex B (Kenton Dep. Tr.) P. 152, L. 8-14.

64.     Denise was diagnosed with "syncope [fainting] and collapse" and "dizziness and giddiness." Ex. H (Mt. Sinai ER records) at DEF921.

**RESPONSE:** Uncontested.

[12]

65.     Around 12:45PM, Tiwary arrived at the hospital and issued Denise a summons for Disorderly Conduct (the "Summons"). Ex. A (Denise Dollard Dep. Tr.), 114:9-16, 115:9-22, 177:2-178:12; Ex. I (Summons).

**RESPONSE:** Uncontested.

66.     The summons alleged that Denise had spat and bumped on Tiwary, causing annoyance and alarm.  Ex. I (Summons).

**RESPONSE:** Uncontested.

67.     After Denise was issued the summons, she had an EKG performed and was free to go. Ex. A (Denise Dollard Dep. Tr.), 178:3-18.

**RESPONSE:** Plaintiffs  object to this statement as irrelevant and immaterial and to the proposed motions.

68.     Denise left the hospital around 1:00 PM, AND WENT home. Ex. A (Denise Dollard Dep. Tr.), 102:1213, 115:23-25, 178:9-23.

**RESPONSE:** Uncontested.

69.     Denise was never taken to the 114 precinct that day and was never placed in a cell. Ex. A. (Denise Dollard Dep. Tr.) 179:3-7

**RESPONSE:** Uncontested.

## Deputy Inspector Fortune

70.     On May 19, 2015, Fortune was notified that there had been an incident at the Church and that one of the Church employees was going to be arrested.  Ex. E (Fortune Dep. Tr.), 37:4-38:25.

**RESPONSE:** Uncontested.

[13]

71.     Fortune had become the commanding officer of the 114th Precinct approximately a week and a half earlier, on April 29, 2015.  Ex. E (Fortune Dep. Tr.), 12:11-14,

**RESPONSE**:  Uncontested.

72.     After being notified of the incident, Fortune decided to go to the scene, because the incident had taken place in a church and it was an opportunity to meet the Church's pastor, Monsignor Ogle.  Ex. E (Fortune Dep. Tr.), 39:2-40:16, 107:23-108:12,

**RESPONSE:**  Plaintiffs object to this statement as constituting conclusions and argument and irrelevant and immaterial to the proposed motion here.

73.     Fortune arrived at the Church after Denise had already been removed to the hospital. Ex. E (Fortune Dep. Tr.), 43:18-21.

**RESPONSE**:  Uncontested.

74.     Denise had no interaction with Fortune at any time on May 19, 2015. Ex. A (Denise Dollard Dep. Tr.), 182:1-12.

**RESPONSE:**  Uncontested.

75.     Denise did not see Fortune at the Church or at the hospital, and did observe or hear any conversations between Fortune and Tiwary. Ex. A (Denise Dollard Dep. Tr.), 182:13- 23.

**RESPONSE**:  Uncontested.

76.     Fortune did not see Tiwary or Kenton at the Church at any time. Ex. E (Fortune Dep. Tr.), 49:9-22.

**RESPONSE:**  Uncontested.

[14]

77.     When he arrived at the Church, Fortune was advised by a supervisory officer that Denise

spat on Tiwary and bumped or put her shoulder into Tiwary's chest. Ex. E (Fortune Dep. Tr.), 41:20-

42:5, 81:15-23.

**RESPONSE:** Objection/Disputed. Fortune did testify he was told these things by

Lieutenant Ortiz at the scene, however, Lt. Ortiz testified he was never at the scene. Ex. E. (Dep. Tr. Lt.

Ortiz) at P. 19, L.14-16.

78.     The supervisory officer told Fortune that plaintiff was going to be charged with, inter

alia, assault in the second degree and obstructing governmental administration ("OGA"). Ex. E (Fortune

Dep. Tr.), 41:20-42:8, 43:6-10.

**RESPONSE:** Objection/Disputed. Fortune did testify he was told these things by

Lieutenant Ortiz at the scene, however, Lt. Ortiz testified he was never at the scene. Ex. E. (Dep. Tr. Lt.

Ortiz) at P. 19, L.14-16.

79.     Fortune went inside the Church and asked some older females that were inside if they

had witnessed any disturbances; none of the females indicated that they had seen anything.  Ex. E

(Fortune Dep. Tr.), 42:15-25, 47:5-48:8.

**RESPONSE:** Objection/Disputed. Plaintiffs object to this statement as constituting

conclusion and argument and because it is not uncontested. In opposite, the one independent witness

who was deposed, Mrs. Green, testified she spoke to Fortune about the incident and he told her Denise

did nothing wrong. Ex. F. (Dep. Tr. Green), P.30, L.6-18.

80.     Fortune then reviewed a video on a small monitor inside an office in the church.  Ex. E

(Fortune Dep. Tr.), 50:6-12, 51:17-20.

**RESPONSE**: Uncontested.

[15]

81.    The video Fortune reviewed depicted an interaction between Denise and

Officers Tiwary and Kenton in the doorway of an office. Ex. E (Fortune Dep. Tr.), 35:3-36:16, 63:17-64:7.

**RESPONSE**:  Uncontested.

82.    The video Fortune reviewed was about ten seconds long.  Ex. E. (Fortune Dep Tr.)

**RESPONSE**:  Disputed. In opposite, Fortune testified the video he was shown at his

deposition was the same one he viewed at the Church that day. This same video, which is filed as Def.

Ex. F, is over four (4) minutes long. Ex. D. (Fortune Dep. Tr.) P.110, L.8-15

83.    The video Fortune reviewed was at a distance and grainy and was not in color. Ex. E

(Fortune Dep. Tr.), 35:3-36:16, 64:13-65:2, 81:6-15, 109:5-18.

**RESPONSE**:  We do not contest that this is Fortune's testimony.

84.    Fortune determined that there was not sufficient support for arrest charges

against Denise for assault in the second degree and OGA. Ex. E (Fortune Dep. Tr.), 54:19-55:3, 81:6-82:6; 107:23-108:12.

**RESPONSE:**  Uncontested.

85.    Based on the facts that were conveyed to him by the supervisory officer Fortune

determined that a criminal court summons for a violation, rather than a formal arrest for assault in the

second degree and OGA, was appropriate. Ex. E (Fortune Dep. Tr.) 45:19-46:6, 81:6- 82:6,, 101:6-102:15, 106:10-18, 107:23-108:25.

**RESPONSE**:  Objection/Disputed. Plaintiffs object to this statement as constituting

conclusions and argument and because it is not uncontested. In opposite, Mary Green testified Fortune

told her Denise did nothing wrong and was not of fault Ex. F. (Dep. Tr. Green), P.30, L.6-18

[16]

### Plaintiff Michael Dollard

86.     Michael Dollard is Denise's husband. Ex. A (Denise Dollard Dep. Tr.), 6:23- 7:2; Ex. B

(Transcript of Deposition of Michael Dollard, taken August 3, 2017 ("Michael Dollard Dep. Tr.")),

4:12-16.

**RESPONSE:** Uncontested.

87.     Michael Dollard arrived at the church after Denise had already been taken away to the

hospital.  Ex. B (Michael Dollard Dep. Tr.), 6:22-7:7.

**RESPONSE**:  Uncontested.

88.     Michael Dollard did not witness any of the events that occurred between Denise and the

police officers.  Ex. B (Michael Dollard Dep. Tr.), 7:8-15.

**RESPONSE**:  Uncontested.

89.     Michael Dollard is asserting a claim in this case for loss of services,  only. Ex. B

(Michael Dollard Dep. Tr.), 7:8-15.

**RESPONSE**:  Uncontested.

## Summons Disposition

90.     Denise made two appearances in Civil Court related to the Summons. Ex. A (Denise

Dollard Dep. Tr.), 179:8-16.

**RESPONSE**:  Uncontested.

91.     The Summons was dismissed at Denise's second court appearance. Ex. A

(Denise Dollard Dep. Tr.), 180:1-181:6.

**RESPONSE**:  Uncontested.

92.     The Summons was dismissed on August 11, 2015.   Ex.  J (Certificate of

Disposition).

[17]

**RESPONSE**: Uncontested.

## Alleged Wrist Injuries

93.     At the hospital, Denise complained to Kenton that the handcuffs were too

tight, but he did not loosen them. Ex. A (Denise Dollard Dep. Tr.), 167:3-9.

   **RESPONSE:** Uncontested.

94.     As a result of the handcuffs, Denise's wrists were hurting and had red

marks on them and her hands were numb; her right wrist was swollen and there was a very small .

.

amount of bleeding.  Ex. A (Denise Dollard Dep. Tr.), 165:14-166:14.

   **RESPONSE**: Uncontested.

95.     Denise never consulted a doctor about the marks on her wrists from the

handcuffs. Ex. A (Denise Dollard Dep. Tr.), 254:19-23.

   **RESPONSE**: Uncontested.

96.     The marks on her wrists went away a week after the incident, without

any medication. Ex. A (Denise Dollard Dep. Tr.), 254:19-255:4.

   **RESPONSE**: Uncontested.

## PLAINTIFFS FURTHER STATEMENT OF UNCONTESTED FACTS.

1.     Officer Tiwary employed excessive, unreasonable and unjustified force in arresting

Denise Dollard.  Ex. D. (Fortune Dep. Tr.) P. 69, L. 15-21; Ex. B (Kenton Dep. Tr.) P. 114, L. 19-P.115,

L.2; Ex. G (Determination of excessive force/misconduct)

2.     There was no probable cause for the arrest of Denise Dollard. Ex. D. (Fortune Dep. Tr.)

P. 69, L. 10-14; Ex. B (Kenton Dep. Tr.) P. 108, L. 24-P. 109, L. 6.

3.     Captain Fortune would have intervened to stop the arrest of Denise Dollard had he been

present. Ex. D (Fortune Dep. Tr.) P.80, L.15- P.81, L. 2.

[18]

4.      Officer Kenton made no attempt to intervene to stop the arrest or attack on Denise

Dollard. Ex. B (Kenton Dep. Tr.), P.115, L. 9-19; Ex. D. (Fortune Dep. Tr.) P.79, L.20-23.

5.      There was no attempt by Officer Kenton to deescalate the encounter between Denise

Dollard and Officer Tiwari. Ex. B (Kenton Dep. Tr.) P. 107, L. 16-P.108, L. 4 and again, P.115, L. 9-19.

6.      There was no reason to remove Denise Dollard from the church before the ambulance

could arrive. Ex A (Tiwary Dep. Tr.) P.139, L.19- P.140, L. 24.

7.      Denise Dollard's condition worsened in the church after her arrest and before the

Defendants decided to remove her from the church before the ambulance could arrive. Ex. B (Kenton

Dep. Tr.) P. 137, L.11-P.138, L.2.

DATED:      Long Beach, NY
            April 16th, 2018

Respectfully submitted,

John E. Quinn, Esq.,
*Attorney for Plaintiffs*
218 E. Park Avenue #303
Long Beach, New York 11561 (631) 488-0959
jeqesq@verizon.net

[19]